**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

ISMELDA M.,

Plaintiff,

v.

FRANK BISIGNANO, Commissioner of Social Security,

Defendant.

Case No. 5:25-cv-02391-DFM

MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

Plaintiff Ismelda M. challenges the denial of her application for a period of disability and disability insurance benefits under Title II of the Social Security Act. See Dkt. 1.[1] The Commissioner filed the certified administrative record. See Dkt. 10 ("AR"). Plaintiff filed an opening brief, see Dkt. 12 ("Pl.'s Br."), the Commissioner filed a responsive brief, see Dkt. 16 ("Def.'s Br."), and Plaintiff replied, see Dkt. 17 ("Reply").

[1] The Court partially redacts Plaintiff's name in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

After the Ninth Circuit decided Powley v. Bisignano, 169 F.4th 1158 (9th Cir. 2026), the Court permitted limited supplemental briefing addressing that decision, see Dkt. 21, which the parties timely filed, see Dkt. 22 ("Def.'s Supp. Br."); Dkt. 23 ("Pl.'s Supp. Br.").

For the reasons set forth below, Plaintiff's job-number objections do not independently warrant reversal, but the Administrative Law Judge's departure from the physical limitations preserved by the prior judicial remand requires further proceedings. The Commissioner's decision is **REVERSED** and the action is **REMANDED** under sentence four of 42 U.S.C. § 405(g).

## II. BACKGROUND

This case has a long history. Plaintiff's claim was first denied by an ALJ decision that the district court reviewed in 2018. See AR 785-94. The court rejected Plaintiff's challenges to the vocational hypothetical concerning breaks and to the ALJ's evaluation of her symptom testimony, but remanded for findings regarding Plaintiff's literacy. See id. The Appeals Council implemented that remand. See AR 817. A later civil action ended in a stipulated remand that authorized further evaluation of the evidence and any necessary development of the record. See AR 2321-24. In implementing that remand, the Appeals Council directed, among other things, a proper vocational analysis of a limitation to six hours of standing and walking. See AR 2333-34.

On remand, the ALJ held a hearing at which a medical expert, Dr. Melamed, and a vocational expert ("VE") testified. See AR 2265-88. The ALJ declined to consolidate a separate, later-filed application for Supplemental Security Income, which was withdrawn. See AR 2231-32; AR 2334. The relevant disability period ends on December 31, 2014, Plaintiff's date last insured. See AR 2231-44.

The ALJ followed the five-step sequential evaluation process for determining whether an individual is disabled. See 20 C.F.R. § 404.1520(a); AR 2231-44. Before step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a restricted range of light work, including only occasional bilateral overhead reaching or lifting and specified limitations on neck movement. See AR 2235. The ALJ found that Plaintiff has a marginal education. See AR 2241. At the hearing, Plaintiff's counsel elicited testimony that the RFC permits a maximum of six hours of standing and walking, and the VE eliminated two occupations he had initially identified. See AR 2281-82. The ALJ then questioned the VE further and elicited replacement occupations. See AR 2286-87.

At step five, the ALJ relied on the VE's testimony to find that Plaintiff could perform four occupations: small-products assembler II (Dictionary of Occupational Titles ("DOT") 739.687-030), with 30,500 jobs nationally; small-products assembler I (DOT 706.684-022), with 20,800 jobs; subassembler (DOT 729.684-054), with 13,600 jobs; and collator operator (DOT 208.685-010), with 31,700 jobs. See AR 2242-43. The ALJ therefore found that Plaintiff was not disabled from her alleged onset date of October 10, 2009 through her date last insured. See AR 2243-44.

Before the ALJ decided the claim, Plaintiff's counsel submitted a posthearing objection to the VE's testimony, supported by Job Browser Pro ("JBP") reports and SkillTRAN tables summarizing Occupational Requirements Survey ("ORS") data. See AR 3015-48. The ALJ overruled the objections. See AR 2243. Plaintiff then filed written exceptions with the Appeals Council, supported by additional calculations and reports, including SkillTRAN ORS reports and OccuCollect tables. See AR 2627-34, 3049-3119. The Appeals Council admitted those submissions as Exhibits 47B and 63E but declined to assume jurisdiction, see AR 2218-24, making the ALJ's September

13, 2024 decision the final decision of the Commissioner, see 20 C.F.R. § 404.984(b)(2). Plaintiff timely filed this action. See Dkt. 1.

## III. LEGAL STANDARD

A district court will set aside a denial of benefits only if "it is either not supported by substantial evidence or is based on legal error." Luther v. Berryhill, 891 F.3d 872, 875 (9th Cir. 2018). Under the substantial evidence standard, the district court looks to the existing administrative record and determines "whether it contains sufficient evidence to support the agency's factual determinations." Biestek v. Berryhill, 587 U.S. 97, 102-03 (2019) (cleaned up). In this context, "substantial" means "more than a mere scintilla" but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 103 (citation omitted). This threshold "is not high" and "defers to the presiding ALJ, who has seen the hearing up close." Id. at 103, 108. "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## IV. DISCUSSION

Plaintiff contends that (1) the ALJ departed from the prior judicial decisions and remand orders by adopting a less restrictive RFC than the one assessed in the earlier ALJ decision; (2) the ALJ failed to resolve Plaintiff's significant and probative evidence rebutting the VE's job-number testimony; and (3) the VE's job numbers are unreliable for various additional reasons. The Commissioner responds that the ALJ properly reassessed the RFC under the broad terms of the later remand, that substantial evidence supports the step-five finding, and that any step-five error was harmless.

## A. Step Five

### 1. Applicable Law

The Commissioner may meet the step-five burden through a VE's testimony. See Ford v. Saul, 950 F.3d 1141, 1149 (9th Cir. 2020). The Commissioner may also take administrative notice of reliable job information available from governmental and other publications. See 20 C.F.R. § 404.1566(d)-(e). A qualified VE's testimony about job numbers ordinarily constitutes substantial evidence, but the VE's credentials do not make that testimony conclusive. See Biestek, 587 U.S. at 105-08.

Two distinct obligations can arise when the ALJ relies on a VE. First, Social Security Ruling ("SSR") 00-4p imposes an affirmative responsibility on the ALJ to ask the VE whether the VE's testimony is consistent with the DOT. See SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000); Massachi v. Astrue, 486 F.3d 1149, 1152-53 (9th Cir. 2007) (discussing SSR 00-4p). If the testimony appears to conflict with the DOT, the ALJ must then obtain a reasonable explanation for the apparent conflict before relying on the testimony. See Massachi, 486 F.3d at 1153-54. The ALJ made the required inquiry here. See AR 2281.

Second, and separately, when a claimant submits evidence contradicting the VE's job-number estimates, the ALJ must address and resolve the inconsistency if the claimant's evidence is "significant and probative." Wischmann v. Kijakazi, 68 F.4th 498, 505 (9th Cir. 2023) (citation omitted). This standard is met where the evidence "was produced using a data source and methodology frequently relied on by the SSA" and no other factors call its accuracy into question. White v. Kijakazi, 44 F.4th 828, 837 (9th Cir. 2022); see also Powley v. Bisignano, 169 F.4th 1158, 1167-69 (9th Cir. 2026) (holding that failure to replicate the VE's methodology and the absence of demonstrated expertise on the part of the claimant's counsel are relevant but not dispositive

factors). Significance, in this context, "is a measure of the discrepancy between the VE's estimates . . . and the claimant's estimates." Wischmann, 68 F.4th at 505. Evidence that does not establish what the claimant says it establishes does not trigger a duty to respond. See id. at 505-07; Terry v. Saul, 998 F.3d 1010, 1012-13 (9th Cir. 2021) (finding that general ORS data suggesting that most identified jobs required more than six hours of standing did not necessarily establish error or undermine the VE's testimony). Once the threshold is met, the ALJ cannot resolve the inconsistency merely by observing that the VE relied on professional experience and responded to an accurate hypothetical question. See Powley, 169 F.4th at 1169.

An error concerning some of the occupations the ALJ identified is harmless where the remaining occupations found by the ALJ exist in significant numbers. See Shaibi v. Berryhill, 883 F.3d 1102, 1110 n.7 (9th Cir. 2017) (as amended). The Ninth Circuit has not established a bright-line numerical floor, but it has found 25,000 national jobs to be a significant number. See Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 528-29 (9th Cir. 2014).

### 2. The Vocational Evidence

The Court considers the posthearing objection that was before the ALJ, see AR 3015-48, together with the exceptions and supporting reports that the Appeals Council admitted, see AR 2218, 2627-34, 3049-3119. Evidence the Appeals Council admits into the record becomes part of the administrative record that the Court considers in determining whether the Commissioner's final decision is supported by substantial evidence. See Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1162-63 (9th Cir. 2012). The Court does not, however, fault the ALJ for failing to discuss material first submitted after her decision. Nor does the Appeals Council's decision to decline jurisdiction supply reasoning the ALJ did not provide. See Luther, 891 F.3d at 876-77.

Small-Products Assembler I and II. The VE testified that the two small-products assembler occupations together account for 51,300 jobs. See AR 2242-43, 2280, 2286. Plaintiff's own JBP reports substantially corroborate those raw counts. See AR 3025-26. Plaintiff's challenge instead concerns how many of those jobs are compatible with her RFC. At the hearing, counsel questioned the VE about the number of jobs in the broader occupational group that includes the assembler occupations, compared with the VE's assembler estimates, and about the percentages of jobs in that group at particular exertional and skill levels. See AR 2283-85. The VE responded, in part, that the survey's occupational classifications are broader than individual DOT occupations. See id.

Plaintiff's posthearing objection presented a more specific comparison. It relied on SkillTRAN ORS data estimating that 11.1% of jobs in the occupational group are performed at the light exertional level; applied to the group's total of 252,660 jobs, that estimate yields approximately 28,045 light jobs across the entire group. See AR 3023, 3034. The VE's estimate for the two assembler occupations, by contrast, represents approximately 20.3% of the group.

Plaintiff's estimate has limitations, as the 11.1% figure is a survey estimate reported with a standard error of seven percentage points, see AR 3034. Either way, the Court need not decide whether this evidence was significant and probative, or whether the ALJ's discussion adequately addressed it, see AR 2243, because, assuming the assessed RFC, any error concerning the assembler job numbers was harmless for the reasons explained below.

Collator Operator. The VE testified that there are 31,700 collator operator jobs nationally, and he maintained that the occupation still exists despite acknowledging limited personal knowledge. See AR 2242-43, 2288.

Plaintiff's JBP report reflects a similar count of 30,797 jobs. See AR 3094. The ALJ rejected Plaintiff's contention that the occupation is obsolete, see AR 2243, and Plaintiff's own evidence supports that determination.

Plaintiff's more focused challenge concerns education. At the hearing, counsel confronted the VE with ORS data indicating that only 15% of jobs in the relevant occupational group have no minimum education requirement. See AR 2287-88. The VE responded that the job is repetitive and unskilled and that he relied on JBP. See id. The table later admitted by the Appeals Council reports the 15% figure, with a standard error of 7.4 percentage points, for a group containing 172,020 jobs. See AR 3094, 3115.

That evidence is not significant and probative evidence contradicting the VE's estimate. To begin, Plaintiff does not establish the necessary connection between the survey category and her own vocational profile. The ALJ found that Plaintiff has a marginal education. See AR 2241. Marginal education means "ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs." 20 C.F.R. § 404.1564(b)(2). The survey figure, by contrast, reports whether employers impose a minimum education requirement across an entire occupational group. Plaintiff does not explain why that group-wide measure of formal requirements establishes the number of collator operator jobs available to an individual whose education the agency has found sufficient for simple, unskilled work.

Moreover, the discrepancy Plaintiff identifies is modest. Applying the 15% figure to the group total yields approximately 25,803 jobs, compared with the VE's estimate of 31,700. See AR 3094, 3115. Given the reported standard error, the survey figure is consistent with a range of values that includes the VE's estimate. That evidence does not give rise to the sort of inconsistency the ALJ was required to resolve. See Wischmann, 68 F.4th at 505-07; Terry, 998 F.3d at 1012-13. The Court therefore does not rely on Plaintiff's calculations of

1,851, 12,850, or 5,573 jobs, see Pl.'s Br. at 13, 15, or on the figures presented in her exceptions, see AR 2627-34.

Subassembler. At the hearing, the ALJ asked the VE to replace the subassembler occupation because of its language-level requirement. See AR 2286-87. The written decision nevertheless retained that occupation and overruled Plaintiff's education-based objection, distinguishing education from English-language fluency and relying on the VE's testimony regarding marginal education and Plaintiff's vocational profile. See AR 2242-43. Plaintiff's JBP report reflects 12,893 subassembler jobs nationally. See AR 3069. Plaintiff's survey-based reduction of that figure relies on data for a different occupational classification than the classification used for the JBP job count, see AR 3069, 3075, 3090, and Plaintiff does not explain why data from one classification may be applied to the other. Because the collator operator occupation independently supports the ALJ's step-five finding under the assessed RFC, the Court need not decide whether the ALJ's resolution of the language-level question was adequate.

**3. Harmless Error**

Even assuming that Plaintiff's assembler evidence triggered a duty to respond and that the ALJ did not adequately discharge it, the error was harmless under the assessed RFC. See Def.'s Br. at 16. The ALJ found that Plaintiff can perform the collator operator occupation, which has 31,700 jobs nationally. See AR 2242-43. That finding rests on the VE's testimony, is consistent with Plaintiff's own JBP count, and is not undermined by significant and probative rebuttal evidence. That number exceeds the 25,000 national jobs the Ninth Circuit found significant in Gutierrez, 740 F.3d at 528-29.

The ALJ did not separately find that any single occupation, standing alone, provides a significant number of jobs. But harmless-error review of this kind does not require the Court to supply a finding the ALJ did not make. See

Shaibi, 883 F.3d at 1110 n.7 (holding error as to one occupation harmless where the ALJ's findings regarding other occupations established a significant number of jobs).

**B. The RFC and the Prior Remand Orders**

Plaintiff also contends that the ALJ violated the law of the case and the rule of mandate by assessing an RFC less restrictive than the one adopted in the earlier ALJ decision, which included hourly sit/stand changes while remaining on task and only occasional rightward head turning. See AR 14; Pl.'s Br. at 6-9; Reply at 2-5. Plaintiff emphasizes that the 2018 decision rejected her challenges to the hypothetical question and symptom evaluation and remanded only for literacy findings. See AR 790-94. The Commissioner responds that the later stipulated remand authorized further evaluation and development of the evidence, see AR 2321-24, and that Dr. Melamed's testimony provided a basis for reassessing the RFC, see AR 2267-77. See Def.'s Br. at 7-9.

The law of the case doctrine and the rule of mandate apply to Social Security remands from federal court. See Stacy v. Colvin, 825 F.3d 563, 567-68 (9th Cir. 2016). Law of the case generally precludes reconsideration of an issue already decided, but permits departure where the evidence on remand is substantially different, controlling law has changed, or applying the doctrine would be unjust. See id. at 567. The rule of mandate requires compliance with the remand order, read as a whole; it permits consideration of matters the mandate did not foreclose. See id. at 568-69. Law of the case applies in the social security context, "notwithstanding formalistic notions of whether the same 'case' returns to the district court following remand." Fallon v. Dudek, 135 F.4th 831, 835-36 (9th Cir. 2025).

The 2018 decision left the physical RFC intact and directed additional vocational consideration using those limitations. The earlier RFC allowed only

occasional rightward head turning and required an hourly sit/stand option while Plaintiff remained on task. See AR 14. The accompanying footnote clarified that the option involved standing and stretching and did not allow for assembly-line work. See AR 14 n.2. In rejecting Plaintiff's challenge to the vocational hypothetical, the court expressly relied on the on-task sit/stand limitation, distinguishing it from a five-minute break that the ALJ had not incorporated into the RFC. See AR 790-91. The court also upheld the symptom evaluation and directed the VE to consider supported literacy limitations together with Plaintiff's other limitations. See AR 792-94. The remand thus left the physical restrictions in place; it did not identify an error requiring their removal.

The present RFC relaxes those restrictions. It omits the hourly sit/stand option and prohibits only constant rightward head or neck turning, thus permitting more than the occasional turning allowed before. Compare AR 14 ("she could occasionally turn her head to the right"), with AR 2235 ("no constant turning of the head or neck to the right"). That change requires justification under the remand doctrines. In Stacy, even earlier step-four findings that the district court had never expressly affirmed were "typically the type of determination that should not be reconsidered [on remand] under the law of the case doctrine." 825 F.3d at 567. Here, the court's express use of the existing sit/stand restriction and its instruction to combine literacy findings with Plaintiff's other limitations provide a stronger basis for preserving the prior determination.

The Commissioner's strongest response is that the later stipulated remand authorized further evaluation of the evidence and any additional action necessary to develop the record and issue a new decision. See Def.'s Br. at 7-9; AR 2321-24. Those directions allowed further development, but did not expressly displace the 2018 ruling or identify a problem in the physical RFC

that required less restrictive findings. The Appeals Council's implementing order identified the need for vocational testimony accounting for the six-hour standing and walking maximum, see AR 2333-34, which could be done while retaining the earlier physical restrictions. By contrast, the remand orders in Stacy expressly required correction of the RFC, which permitted reconsideration of the resulting step-four determination. See 825 F.3d at 568-69 ("By asking the ALJ to correct Stacy's RFC, Judge Mosman also impliedly instructed the ALJ to reconsider step 4 and determine whether someone with that corrected RFC could perform Stacy's past work."). Reading the orders here together, their general development language did not eliminate the limitations preserved by the earlier judicial decision. The Court need not invalidate the later stipulated remand to give effect to both orders.

Nor does the evidence on which the ALJ relied establish a basis for departing from those limitations. Dr. Melamed gave new testimony, but the relevant testimony reassessed the same medical findings from before Plaintiff's date last insured, including the normal gait and lumbar findings, the cervical imaging and electrodiagnostic results, and the examining physician's assessment. See AR 2267-77. Those findings and the competing medical opinions were already considered in the earlier decision. Compare AR 17-19, with AR 2239-40. Dr. Melamed explained that a sit/stand option was unnecessary because the principal impairment involved the neck rather than the lower extremities; the ALJ likewise relied on the normal lumbar and gait findings. See AR 2239, 2270-71. This provided a different assessment of the earlier evidence, but the decision did not identify a substantially different finding about Plaintiff's functioning during the insured period that justified removing the preserved restrictions. Dr. Melamed's discussion of deterioration after 2014 did not supply that basis either. See AR 2239, 2271-73. Unlike the new testimony in Stacy, which revealed that the claimant's former work was

predominantly supervisory and changed its vocational classification, this testimony did not establish a comparable new fact undermining the earlier determination. See 825 F.3d at 567.

The error is consequential to the vocational determination. The VE identified the occupations in response to the current, less restrictive RFC, and the hearing did not establish that the collator operator jobs could be performed with both an hourly on-task sit/stand option and only occasional rightward head turning. See AR 2278-88. As such, further proceedings are required.

### C. Remedy

An immediate award of benefits is not warranted because the vocational effect of the preserved limitations remains unresolved. Further proceedings would serve a useful purpose, and the present record does not require a finding of disability. See Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014).

On remand, the ALJ shall obtain supplemental vocational testimony using an RFC that includes the hourly sit/stand option while remaining on task, including the clarification at AR 14 n.2, and only occasional rightward head turning, together with the other applicable restrictions supported by the record. The hypothetical questions must account for the six-hour standing and walking maximum and Plaintiff's vocational profile.

## V. CONCLUSION

Accordingly, IT IS HEREBY ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this action for further administrative proceedings consistent with this Memorandum Opinion and Order under sentence four of 42 U.S.C. § 405(g).

Date: September 30, 2026

DOUGLAS F. McCORMICK
United States Magistrate Judge